**POLLACK LAW, P.C.**
225 Broadway, Suite 850
New York, New York 10007
Phone: (212) 765-5225
Fax: (929) 529-8562
Steve@stevepollacklaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| US INFORMATION GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DATA BLADE LLC and<br>ZACHARY K. VRONA,<br><br>Defendants. | Civil Action No. <u>25-cv-1844</u><br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, US Information Group LLC ("USIG"), by and through its undersigned counsel, hereby brings suit against Defendants Data Blade LLC and Zachary K. Vrona ("**Defendants**"), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for unfair competition, false designation of origin, cybersquatting, and related business torts. Defendants have willfully copied USIG's unique website and branding in an effort to mislead consumers and hijack USIG's business. USIG, the creator of the original BOIR.com website for beneficial ownership compliance, was the first mover in its industry. Defendants, months later, launched a knock-off website at "filetheboir.com" and "boirfile.org" that is virtually identical to USIG's site – copying its logo, design, text, and even legal policies –

1

in a blatant attempt to confuse the marketplace and profit from USIG's goodwill. USIG brings this action to stop Defendants' unlawful conduct and to recover damages for the serious harm caused by Defendants' schemes.

## THE PARTIES

2.      Plaintiff USIG is a New Jersey limited liability company formed on May 19, 2020, with its principal place of business at 560 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

3.      Defendant Data Blade LLC, formerly known as "VINformatics LLC," is a limited liability company organized under the laws of Arizona, with its principal place of business at 1323 S Hardy Dr, TEMPE, AZ 85281. Defendant Data Blade LLC operates the website located at "filetheboir.com" and boirfile.org, and purports to offer beneficial ownership reporting services in direct competition with USIG.

4.      Defendant Zachary K. Vrona is an individual residing in Arizona and is the registered agent of Data Blade LLC, using the same address as the company (*i.e.*, 1323 S Hardy Dr, TEMPE, AZ, 85281). His registered email address is zvronabusiness@gmail.com. Upon information and belief, Zachary K. Vrona is an owner and sole member of Data Blade LLC and directed, controlled, and participated in the wrongful acts alleged herein. At all relevant times, Vrona acted on behalf of Data Blade LLC and also for his own benefit. He is named as a defendant both in his capacity as Data Blade LLC's registered agent and personally, as an active participant in the unlawful conduct described below.

5.      Together, Defendants deliberately misappropriated USIG's intellectual property and goodwill for their own benefit.

## JURISDICTION AND VENUE

### A.  Subject Matter Jurisdiction

6.    This Court has subject matter jurisdiction over USIG's claims pursuant to 28 U.S.C. § 1331, because the action arises under federal law, including 15 U.S.C. § 1125(a) and (d) (the Lanham Act). The Court has supplemental jurisdiction over USIG's state law claims under 28 U.S.C. § 1367. Alternatively, diversity jurisdiction under 28 U.S.C. § 1332 exists because there is complete diversity among the parties (Plaintiff is a New Jersey Citizen and Defendants are both Arizona citizens) and the amount in controversy exceeds $75,000, exclusive of interests and costs.

### B.  Personal Jurisdiction Over Defendant

7.    This Court has personal jurisdiction over Defendants. Defendants purposefully directed their wrongful acts toward New Jersey and caused harm to USIG, a New Jersey-based company. Defendants operated an interactive website accessible in New Jersey that was designed to confuse New Jersey consumers and divert business from USIG, a New Jersey company, in New Jersey. Defendants also engaged in willful acts (including fraudulent communications) intended to disrupt USIG's business activities in New Jersey. By virtue of these acts and their intentional effect on the stream of New Jersey commerce, Defendants have established minimum contacts with New Jersey such that exercising jurisdiction over them comports with due process. Additionally, to the extent applicable, jurisdiction is proper under New Jersey's long-arm statute (N.J. Court Rule 4:4-4) because Defendants committed tortious acts causing injury within the state.

### C.  Venue

8.    Venue is proper in this District under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims occurred in this District, and the harm to USIG's

business is felt in this District where USIG is headquartered. Defendants' online activities were targeted at New Jersey residents, including in this District. Additionally, under 28 U.S.C. § 1391(b)(2) and (b)(3), venue is proper in this District because Defendants are subject to personal jurisdiction here and there is no other district that would more conveniently serve the interests of justice for all parties.

## STATEMENT OF FACTS

### A. USIG and the BOIR.com Website

9.      In 2024, new federal regulations under the Corporate Transparency Act required millions of businesses to file Beneficial Ownership Information reports with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). Anticipating the need for compliance assistance, USIG developed an online service to help businesses understand and fulfill these new reporting obligations. USIG created a website at **BOIR.com** (with "BOIR" referring to Beneficial Ownership Information Reporting) on or before September 2024. USIG was a pioneer in this emerging compliance market and invested substantial time, money, and creativity into designing a unique and user-friendly website for BOIR.com.

10.      By the time of its launch, BOIR.com had a distinctive look and feel. USIG's website featured original content, a creative layout and color scheme, a stylized logo and emblem incorporating the "BOIR" language, and carefully written text explaining the service and the new regulations. The website contained original, user-friendly educational material and a portal to facilitate direct reporting of beneficial ownership information to the required federal agencies. USIG also drafted its own Terms of Service, Privacy Policy, and other legal notices for the site, tailoring them to its business. It also contained unique and transparent disclaimers, being sure to disclaim any affiliation with the US Government or the Financial Crimes Enforcement Network

(FinCEN). Through its marketing efforts and the novelty of the service, USIG quickly gained goodwill and recognition as a trustworthy resource for low cost beneficial ownership compliance assistance. Businesses and professionals came to identify "BOIR.com" and USIG's branding as the source of high-quality compliance assistance. By late 2024, USIG's BOIR.com website had an established reputation and was uniquely associated with USIG's services in the minds of consumers.

11.     Significant investment in SEO and marketing also earned USIG a top spot in Google searches for "beneficial ownership reporting" and similar search terms.

**B.  Defendants' Counterfeit Scheme**

12.     Defendant Data Blade LLC, through the direction of Defendant Zachary K. Vrona, became aware of USIG's successful BOIR.com website. Rather than develop their own original content or brand, Defendants chose a path of outright theft and deception. On December 10, 2024, Data Blade LLC registered the domain names **"filetheboir.com"** and **"boirfile.org"** ("**Counterfeit Domain Names**"). This domain was clearly chosen to capitalize on the BOIR name – it incorporated USIG's "BOIR" mark in its entirety, merely adding the generic phrase "file the." This is a nefarious tactic known as combosquatting. Upon information and belief, shortly after securing this domain, Defendants launched the same website at both domain names (the "**Counterfeit Website**") that was a **pixel-for-pixel clone** of USIG's BOIR.com site.

13.     Defendants copied essentially *every element* of USIG's website without authorization. The Counterfeit Website reproduced USIG's logo or an extremely similar logo, mimicked the same layout and navigational structure, used an identical or strikingly similar color scheme, and duplicated all of the textual content from BOIR.com. This included copying USIG's descriptive content, FAQs, and even the legal documents (Terms of Service, Privacy Policy, and

related policies) almost word-for-word. The Counterfeit Website presented the same information in the same order as BOIR.com, giving the false impression that the Counterfeit Domain Names and Counterfeit Website were either the same site as BOIR.com or were directly affiliated with USIG. In effect, Defendants built a **<u>sham replica</u>** of USIG's website in order to trade on USIG's creativity and investment, all while incurring none of the costs or effort themselves.

14.     An exemplary juxtaposition of a page from the two websites is below:



15.   Defendants' actions were deliberate and malicious. By creating a twin website at a confusingly similar domain name, Defendants intended to deceive consumers into believing that filetheboir.com was the official BOIR reporting service or was associated with USIG. The

inclusion of the exact content and branding was aimed at sowing confusion in the marketplace. Any business owner searching for "BOIR" or beneficial ownership reporting could easily stumble upon Defendants' Counterfeit Domain Names and Counterfeit Website and assume they were the same trusted service provided by USIG. Defendants stood to profit from this confusion by diverting web traffic and potential paying customers away from USIG and toward Defendants' copycat service. Defendants undertook this scheme with full knowledge of USIG's prior use of BOIR.com and with the willful intent to exploit USIG's goodwill and reputation for their own gain.

**C.  Defendants Use the Counterfeit Website to Further its "Jean-Gate" Fraud Scheme**

16.      If ripping off Plaintiff's legitimate website were not bad enough, Defendants took their misconduct even further. They created a website at their domain name, "BOIRgirl.com," to process fraudulent credit card transactions that would otherwise be processed through the Counterfeit Website. Specifically, that website, operating under Data Blade's former name and address, claims to sell a variety of clothing—but only one item is ever "in-stock:" a generic, unbranded pair of women's jeans. No sizing options, no model photographs, a fake SKU number, no visible tags—just a single floating pair of jeans, suspiciously priced at a whopping $349!

17.      Not coincidentally, Defendants charge exactly $349 for their BOIR filing service on the Counterfeit Website. Notably, Defendants didn't even bother to write up product descriptions for the other ostensibly advertised clothing, just the $349 generic jean product.

18.      Upon information and belief, Defendants used BOIRgirl.com to process credit card transactions under a lower-risk category, to obscure the true profits from their Counterfeit Website, or for some other fraudulent purpose.

19.      True and correct snapshots from the BOIRgirl.com website are below:



Boir Girl Athletic Jeans
$349.00

BoirTech Sports Bra Light Support
Out of stock

BoirTech Studio Jogger
Out of stock

Comfort+ Zip Up Vest High Support
Out of stock

| Links | Explore | Join our Newsletter | About Us |
|---|---|---|---|
| Home | FAQ | | Vinformatics LLC |
| Shop | Shipping & Returns | Enter your email here* | 1323 S Hardy Dr, |
| About | Store Policy | | Tempe AZ 85281 |
| Forum | Payment Methods | Subscribe Now | contact@boirgirl.com |
| Contact | | | |

2024 Vinformatics LLC

Home / Boir Girl Athletic Jeans

‹ Prev  |  Next ›



### Boir Girl Athletic Jeans

SKU: 017

$349.00

As low as $33.36/mo. **PayPal** Learn More

Quantity

1

Add To Cart

Comfortably go about your day in our new athletic jeans. Be
that Boir girl you want to be!

9

Home / BoirTech Sports Bra Light Support                    ‹ Prev | Next ›



### BoirTech Sports Bra Light Support

SKU: 0001

$42.00

Pay in 4 interest-free payments of
$10.50. **PayPal** Learn More

Out of Stock

Product Info                                                —

I'm a product detail. I'm a great place to add more
information about your product such as sizing,
material, care and cleaning instructions. This is
also a great space to write what makes this
product special and how your customers can
benefit from this item.

Return & Refund Policy                                      +

Shipping Info                                               +

I'm a product description. I'm a great place to add more details

Home / BoirTech Studio Jogger                              ‹ Prev | Next ›



### BoirTech Studio Jogger

SKU: 0007

$60.00

Pay in 4 interest-free payments of
$15.00. **PayPal** Learn More

Out of Stock

Product Info                                                —

I'm a product detail. I'm a great place to add more
information about your product such as sizing,
material, care and cleaning instructions. This is
also a great space to write what makes this
product special and how your customers can
benefit from this item.

Return & Refund Policy                                      +

Shipping Info                                               +



**D.  <u>Defendants' Misconduct Causes Immediate, Irreparable Harm</u>**

20.      As a result of Defendants' Counterfeit Website, actual confusion occurred among consumers. USIG became aware of multiple instances in which businesses or individuals were misled by the two sites. For example, USIG received inquiries and emails from would-be customers that revealed they had interacted with the filetheboir.com site under the mistaken belief that it was USIG's BOIR service. Some customers who intended to use USIG's BOIR.com service inadvertently went to the Counterfeit Website and provided information, made payment, and/or sought support there, thinking they were dealing with USIG. Likewise, other consumers contacted USIG asking about content they saw on filetheboir.com or referencing terms from that site, not realizing it was a different website entirely. These incidents demonstrate that Defendants' imitation succeeded in confusing the public. USIG lost business opportunities and suffered damage to its

reputation due to customers being misdirected or uncertain about which website was the legitimate BOIR compliance service.

21.     Upon discovering the Counterfeit Website, USIG took swift action to protect its intellectual property and its customers. In late 2024 and early 2025, USIG sent multiple takedown notices pursuant to the Digital Millennium Copyright Act (DMCA) to the internet service providers and/or web hosts associated with filetheboir.com. In these notices, USIG identified the copied content and asserted its rights as the original author/owner of the website material. USIG requested that the infringing content be removed or disabled. These DMCA takedown requests were proper and complied with the law, as they were aimed at halting the unauthorized reproduction of USIG's copyrighted text and website design.

**E.  Defendants' Fraudulent Response – Impersonation of USIG**

22.     Rather than cease their wrongdoing, Defendants escalated their illicit behavior. In response to USIG's takedown efforts, Defendants engaged in a brazen act of fraud and impersonation. Upon information and belief, Defendant Zachary K. Vrona (on behalf of Data Blade) responded to one or more service providers or authorities by falsely claiming to be the creator of the original website design. In these communications, Defendants essentially impersonated USIG and provided false information intended to undermine USIG's takedown requests. Specifically, Defendants asserted that they were, in fact, the rightful owner of the BOIR.com content, and in a cease-and-desist letter absurdly demanded that USIG's own website (BOIR.com) be taken down as the "infringing" site. In other words, Defendants attempted to turn the situation upside-down by fraudulently misrepresenting to service providers that the legitimate BOIR.com site was a copy of the Counterfeit Website, rather than the other way around.

23.     This calculated impersonation was an abuse of the DMCA process and an effort to weaponize it against the victim. By sending such knowingly false statements to USIG's web host or other third parties, Defendants hoped to cause BOIR.com – the authentic site – to be disabled or removed. Defendants' deceitful tactic forced USIG to expend additional time and resources to clarify the truth and ensure its website remained accessible. This conduct demonstrates an extraordinary level of bad faith and malice: Defendants were willing to lie to attempt to sabotage USIG's entire business presence online, all to further their scheme of diverting customers.

## F.  Damages Continue to Accrue

24.     Defendants' wrongful acts have caused and continue to cause severe harm to USIG. USIG has suffered loss of customers and revenue because some portion of its target market was misled into using and paying for Defendants' counterfeit service. USIG's goodwill and brand reputation have been tarnished by the confusion in the marketplace; customers have expressed uncertainty about which website is legitimate, reflecting a loss of confidence instigated by Defendants' imitation. USIG also incurred significant costs in investigating the infringement, sending DMCA notices, and addressing the fallout from Defendants' fraudulent countermeasures. Moreover, the stress on USIG's business relationships (such as with its providers and clients) caused by Defendants' impersonation led to downtime and service interruptions, further risking USIG's business continuity. All of these damages were directly and proximately caused by Defendants' intentional misconduct.

25.     In sum, Defendants have: (a) deliberately copied USIG's protected branding and website content; (b) used a confusingly similar domain name incorporating USIG's mark to deceive customers; (c) created actual confusion in the marketplace as to the source and affiliation of their services; and (d) engaged in fraudulent attempts to remove USIG's presence from the

internet by essentially impersonating USIG. Defendants undertook these actions willfully, with full knowledge of USIG's rights, and with the intent to enrich themselves unfairly at USIG's expense. Such conduct constitutes false designation of origin and unfair competition under federal law, cybersquatting under federal law, and multiple violations of state statutory and common law. USIG now seeks relief from this Court to put an end to Defendants' unlawful activities and to compensate USIG for the injuries it has suffered.

### FIRST CAUSE OF ACTION
### False Designation of Origin & Unfair Competition
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

26.     Plaintiff USIG repeats and realleges all of the foregoing paragraphs as though fully set forth herein.

27.     USIG has protectable trademark rights and trade dress in the name "BOIR" and in the distinctive design and appearance of its BOIR.com website. Through USIG's use in commerce and promotion of its services, the term "BOIR" has come to be associated in the minds of consumers with USIG's business and compliance services. Additionally, the overall look and feel of the BOIR.com website – including its layout, color scheme, and visual design elements – serves to identify the source of the services and distinguish USIG's site from others. These identifiers (the BOIR name/mark and the website's trade dress) are inherently distinctive or, in the alternative, have acquired secondary meaning as designators of USIG as the source.

28.     Moreover, USIG has common law copyright protection, which existing from the moment of authorship, over its text, website, drawings, logos, emblems, content structure, color scheme, pictorial elements, and articles on the BOIR.com website.

29.     Defendants have used in commerce designations that are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' services. For

example, Defendants' domain names "filetheboir.com" and "boirfile.org" are confusingly similar to USIG's BOIR mark and internet domain; the domains incorporate the entire BOIR mark and suggests an official connection (e.g., "file the BOIR" implies a function of the BOIR service). Moreover, Defendants populated the Counterfeit Website on the Counterfeit Domain Names with content that is nearly identical to USIG's website content, including the BOIR logo and branded materials. By replicating USIG's trade dress and textual content, Defendants made their website appear indistinguishable from the genuine BOIR.com site. Such use of USIG's mark, trade dress, and content by Defendants was done without USIG's consent or authorization.

30.      Defendants' actions are likely to cause confusion and have in fact caused actual confusion among consumers. Consumers encountering Defendants' Counterfeit Website are likely to be misled into believing that the site is operated by, affiliated with, or sponsored by USIG, when it is not. Likewise, consumers may incorrectly conclude that USIG has endorsed or approved Defendants' services, or that there is only one source for BOIR filing services when in reality there are two unrelated entities. Actual confusion has occurred, as detailed above, with customers unwittingly engaging Defendants' site believing it to be USIG's. Defendants' use of near-identical content and branding exacerbates the confusion, making it virtually impossible for an ordinary observer to distinguish the two sources. This confusion directly affects purchasing decisions and the goodwill associated with USIG's offerings.

31.      Defendants' conduct described herein constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). By using USIG's BOIR logo and mark (or a nearly indistinguishable imitation) and copying the trade dress of USIG's website, Defendants have falsely represented to the public that their services originate from or are connected to USIG. Defendants' misrepresentations and misleading use of USIG's

branding are likely to cause confusion as to the origin or sponsorship of Defendants' services, and thus constitute false designation of origin under the statute. Furthermore, Defendants' actions amount to unfair competition because they have misappropriated USIG's labors and reputation to unfairly compete in the marketplace. Defendants are effectively "passing off" USIG's services as their own (or vice versa) by offering a duplicate service under confusingly similar guise.

32.    Defendants engaged in the aforementioned acts willfully and with the intent to deceive consumers and trade on USIG's established reputation. Defendants had full knowledge of USIG's prior use of the BOIR marks and website; indeed, Defendants' entire site was constructed by copying USIG's site, evidencing knowledge. Despite this knowledge, Defendants deliberately chose a similar name and duplicated content specifically to cause confusion and divert business. Such intentional conduct renders this an exceptional case of deliberate infringement and unfair competition. Upon information and belief, Defendants purchased keywords and optimized its site for BOIR.com, Plaintiff's website, so that when consumer would search the term online, they would be diverted to Defendants' website instead of Plaintiff's.

33.    As a direct and proximate result of Defendants' false designation of origin and unfair competitive acts, USIG has suffered and will continue to suffer irreparable harm and damage to its business, reputation, and goodwill for which there is no adequate remedy at law. USIG has also suffered monetary damages in the form of lost business opportunities and diminished value of its brand. Unless enjoined by this Court, Defendants will continue to confuse consumers and harm USIG's competitive position.

34.    Pursuant to 15 U.S.C. §§ 1116 and 1117, USIG is entitled to injunctive relief to prevent further violations, and to recover Defendants' profits, USIG's actual damages, and the costs of this action. Furthermore, given the willful and malicious nature of Defendants' conduct,

16

USIG is entitled to an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) (as this is an "exceptional case" of intentional infringement), as well as any punitive damages available under the law for the willful and fraudulent elements of Defendants' misconduct.

**SECOND CAUSE OF ACTION**
**Cybersquatting**
**(Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

35.    Plaintiff USIG repeats and realleges all preceding paragraphs as though fully set forth herein.

36.    USIG's **"BOIR.com"** domain and mark are distinctive and were distinctive at the time Defendants registered the domain names "filetheboir.com" and "boirfile.org." By virtue of USIG's use of the BOIR.COM brand and domain name in commerce and its marketing efforts, USIG had established at least common law trademark rights in the BOIR and BOIR.COM mark prior to December 2024. The consuming public associates BOIR.COM with USIG's website and compliance services.

37.    Defendants registered, trafficked in, or used the internet domain name "filetheboir.com" with a bad-faith intent to profit from USIG's BOIR.com mark. The domain name "filetheboir.com" is confusingly similar to USIG's BOIR mark and to USIG's domain name "boir.com." The only difference between Defendants' domain and USIG's mark/domain is the addition of the generic phrase "file" and "filethe," which refers directly to the action of filing a BOIR (a logical association with USIG's services). This addition does not distinguish the domain from USIG's mark; rather, it reinforces the connection by implying an official or authorized site to "file" a BOIR. Accordingly, consumers are likely to assume that Counterfeit Domain Names are operated by or affiliated with the owner of the BOIR mark (i.e., USIG).

38.    Defendants have acted with bad faith intent to profit from USIG's mark in registering and using Counterfeit Domain Names. Multiple factors, as outlined in the Anticybersquatting Consumer Protection Act (ACPA), demonstrate Defendants' bad faith:

a.    **No Legitimate Rights or Interest:** Defendants have no trademark or intellectual property rights in the term "BOIR." The word is uniquely tied to USIG's service. Defendants are not commonly known by "boirfile," "filetheboir," or "BOIR," nor is "boirfile" or "filetheboir" a legitimate name of any business or service of Defendants apart from the infringing use.

b.    **Intent to Divert for Commercial Gain:** Defendants' entire purpose in registering the domain was to divert consumers seeking USIG's BOIR service to Defendants' own website for commercial gain. By creating a confusingly similar domain and duplicating USIG's content, Defendants sought to attract internet users and obtain business that rightfully would have gone to USIG. This diversion was accomplished by creating confusion as to source or affiliation.

c.    **Pattern of Deception:** Defendants' conduct – including copying a competitor's website and impersonating that competitor in communications – evidences a pattern of deceitful and bad-faith behavior with respect to domain names and web content. This is not an innocent or isolated use of another's mark, but a deliberate scheme to mislead.

d.    **Extent of Use in Site Copying:** The Counterfeit Domain Names were not chosen arbitrarily; they were immediately used in conjunction with a site that is a wholesale copy of USIG's site. This tight correlation between the infringing domain and

infringing website content underscores the intent to target USIG's mark and reputation.

39.    These factors, among others, make clear that Defendants registered and used the domain name with the intent to profit from and exploit USIG's BOIR mark by creating confusion.

40.    Defendants' registration and use of the domain names "filetheboir.com" and "boirfile.org" constitutes cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d). By registering a domain name confusingly similar to USIG's distinctive mark, with bad-faith intent to profit from that mark, Defendants have met all the elements of an ACPA violation. USIG did not authorize Defendants to use its BOIR mark in any domain or to register any such domain. Defendants' bad faith is evidenced by their willful copying of USIG's site and attempts to deceive the public, as detailed above. There is no plausible good-faith use of the Counterfeit Domain Names by Defendants; they exist solely to carry out and benefit from the infringement of USIG's rights.

41.    As a direct result of Defendants' cybersquatting, USIG has suffered harm including lost traffic to its BOIR.com site, lost customers, and dilution of the unique association of its mark with its services. The presence of Defendants' confusing domain has made it more difficult for customers to find or trust USIG's official website. Pursuant to 15 U.S.C. § 1125(d), USIG is entitled to recover Defendants' profits and USIG's actual damages caused by the cybersquatting. In the alternative, USIG may elect to recover statutory damages of up to $100,000 for the bad-faith registration and use of the Counterfeit Domain Names, as provided by the statute. USIG is also entitled to an order transferring the Counterfeit Domain Names to USIG, as well as injunctive relief to prevent Defendants from registering or using any other domain names that are identical or confusingly similar to USIG's mark. Furthermore, USIG is entitled to recover its attorneys' fees

and costs under the ACPA and Lanham Act, as this is a case of willful and malicious cybersquatting.

## THIRD CAUSE OF ACTION
## Unfair Competition and Deceptive Trade Practices (State Law)

42.     Plaintiff USIG repeats and realleges all preceding paragraphs as though fully set forth herein.

43.     Defendants' conduct constitutes unfair competition under the statutory and common law of New Jersey (and/or other applicable state law). New Jersey statutory law (N.J. Stat. § 56:4-1, et seq.) and common law prohibit the misappropriation of a business's name, goodwill, reputation, or unique product by a competitor. Defendants have violated these principles by appropriating for their own use the name, branding, and goodwill that rightfully belong to USIG. By copying USIG's BOIR mark, logo, website design, domain name, and content, and by passing off their services as those of or associated with USIG, Defendants have unlawfully traded on USIG's reputation and work product. This misappropriation allowed Defendants to compete unfairly, reaping where they did not sow, and causing confusion and damage to USIG.

44.     In addition, Defendants' actions amount to deceptive trade practices as defined under New Jersey law (e.g., the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-2, and related laws) and/or under the laws of any other state with an interest in this dispute. Defendants engaged in fraudulent, deceptive, and unethical conduct by creating a clone website and impersonating USIG in commerce. This includes deceiving customers by presenting false or misleading information (a fake "BOIR" site), processing fraudulent transactions and concealing profits through "BOIRgirl.com," and deceiving third-party service providers through false representations (pretending to be USIG in DMCA responses). Such conduct is unscrupulous and offends public policy, as it is designed to mislead consumers and harm a competitor through dishonesty. It is

precisely the kind of unfair and deceptive practice that state consumer protection and unfair competition laws are meant to redress.

45.     Furthermore, Defendants' actions constitute a form of tortious interference with USIG's business relationships and expectancies, which is actionable under state law and is a type of unfair competition. By duping customers into doing business with the Counterfeit Website, Defendants intentionally interfered with USIG's expected business relationships with those customers. By fraudulently attempting to have USIG's BOIR.com site taken down, Defendants interfered with USIG's contractual and business relationships with its web host and with existing customers who rely on access to BOIR.com. Defendants employed illegitimate means (deception and intellectual property theft) to disrupt USIG's relationships and steal business. This interference was done with malice and for the sole purpose of gaining an unfair competitive edge, which the law forbids.

46.     Defendants' unfair competition and deceptive practices have caused significant injury to USIG, including loss of business, loss of goodwill, reputational harm, and other financial losses. USIG has been forced to expend resources to counteract Defendants' deception and to reassure confused customers. The competitive playing field has been skewed by Defendants' unlawful tactics, placing USIG at an unjust disadvantage that it would not have faced but for Defendants' misconduct.

47.     Defendants committed the aforementioned acts willfully and with actual malice or wanton disregard of USIG's rights. Such egregious conduct under state law entitles USIG to recover various damages and remedies. In particular, USIG seeks compensatory damages for the losses sustained due to Defendants' unfair competition (including lost profits and the value of loss of goodwill). USIG also seeks punitive damages to punish and deter Defendants for their malicious

conduct, as allowed under state law given the intentional and fraudulent nature of Defendants' actions. Additionally, USIG is entitled to appropriate injunctive relief under state law to halt Defendants' deceptive trade practices and unfair competition. To the extent applicable, USIG also seeks recovery of its attorneys' fees and costs under any state statutes (such as N.J. Stat. § 56:8-19 of the Consumer Fraud Act) that permit fee-shifting in cases of intentional misconduct, or under the Court's equitable powers.

## JURY DEMAND

48.    Plaintiff demands a trial by jury as to all claims that may be tried to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands the entry of judgment in its favor and against the Defendants as follows:

a. **Injunctive Relief:** A permanent injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from:

i. continuing to operate the website at **filetheboir.com, boirfile.org** (or any other website) using USIG's BOIR mark, any colorable imitation thereof, or any copied content from USIG's website;

ii. using the "BOIR" name or mark (or any confusingly similar term) in any manner in connection with the promotion, offer, or sale of beneficial ownership reporting services;

iii. representing by words or conduct that Defendants or their services are in any way affiliated with, sponsored by, or endorsed by USIG; and

iv. otherwise engaging in any false designation of origin, unfair competition, or deceptive trade practices that infringe upon USIG's rights.

b. **Domain Name Transfer:** An order directing Defendants to immediately transfer the domain names "filetheboir.com" and boirfile.org (and any other domain names registered by Defendants that contain the BOIR mark or any confusingly similar variation) to Plaintiff USIG, to eliminate the source of confusion and to place control of the infringing domain in the hands of USIG.

c. **Destruction of Infringing Materials:** An order requiring Defendants to deliver up for destruction all materials in their possession, custody, or control that infringe USIG's rights or were derived from USIG's website, including but not limited to copies of website files, documents, logos, graphics, or text taken from USIG's BOIR.com site, as well as any marketing or promotional materials bearing the BOIR name or other indicia of USIG.

d. **Disgorgement of Profits:** An award of disgorgement of all profits obtained by Defendants as a result of their wrongful acts. Defendants should be required to account for and turn over any and all revenues or profits earned from operating the filetheboir.com and boirfile.org website or from providing services to customers who were misled by Defendants' conduct, to prevent Defendants from unjustly enriching themselves at USIG's expense.

e. **Actual Damages:** An award of actual damages sustained by USIG, in an amount to be proven at trial. This includes compensation for lost customers, lost sales, harm to goodwill, and other economic injuries directly caused by Defendants' unfair competition and infringement. Pursuant to 15 U.S.C. § 1117(a), USIG's damages for the Lanham Act violations may be trebled (tripled) by the Court in light of Defendants' willful and intentional misconduct.

f.  **Statutory Damages:** In lieu of or in addition to actual damages (where allowed by law), an award of statutory damages. Specifically, under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), USIG elects to recover statutory damages of up to $100,000 for Defendants' bad-faith registration and use of the "filetheboir.com" and "boirfile.org" domain names (or for each domain name found to be in violation, as applicable).

g.  **Punitive/Exemplary Damages:** An award of punitive damages (exemplary damages) under applicable state law, given the outrageous and malicious nature of Defendants' conduct. Defendants intentionally and fraudulently engaged in wrongdoing, including hijacking Plaintiff's website, impersonating the Plaintiff, and attempting to take down Plaintiff's own website, which justifies an award of punitive damages to punish Defendants and deter similar conduct in the future.

h.  **Attorneys' Fees and Costs:** An order that Defendants pay USIG's reasonable attorneys' fees and costs incurred in this action. An award of fees is warranted under the Lanham Act (15 U.S.C. § 1117(a)) due to the exceptional and willful nature of the infringement, and is also warranted under any applicable state statutes (such as consumer fraud or deceptive trade practices laws providing for fee-shifting). USIG also seeks reimbursement of all taxable costs, filing fees, and related litigation expenses.

i.  **Pre- and Post-Judgment Interest:** An award of pre-judgment and post-judgment interest on all monetary awards, at the maximum rate allowed by law, from the date the harm occurred until the date Defendants satisfy the judgment, to fully compensate USIG for the time value of money lost due to Defendants' conduct.

j. **Such Other Relief as the Court Deems Just and Proper:** An award of such other and further relief as the Court may deem equitable, just, and proper under the circumstances. This may include any additional declaratory relief, equitable accounting, or corrective advertising order necessary to restore the parties to their rightful positions and to dispel any ongoing confusion in the marketplace caused by Defendants' actions.

Dated: March 13, 2025                          Respectfully Submitted,

                                               /s/ Steven Pollack
                                               Steven Pollack, Esq. (Bar No. 034562012)
                                               POLLACK LAW, P.C.
                                               225 Broadway, Suite 850
                                               New York, NY 10007
                                               Telephone: (212) 765-5225
                                               Fax: (929) 529-8562
                                               Steve@stevepollacklaw.com

                                               *Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify under penalty of perjury that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: March 13, 2025                            Respectfully Submitted,

                                                /s/ Steven Pollack
                                                Steven Pollack, Esq. (Bar No. 034562012)
                                                POLLACK LAW, P.C.
                                                225 Broadway, Suite 850
                                                New York, NY 10007
                                                Telephone: (212) 765-5225
                                                Fax: (929) 529-8562
                                                Steve@stevepollacklaw.com

                                                *Counsel for Plaintiff*